IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **NANCY STERN-JONES,** | * | |
| **Plaintiff** | * | |
| v. | * | Civil Action No.: CBD 06-1019 |
| **SHARON L. MARSELAS, M.D., et al.,** | * | |
| **Defendants.** | * | |

******

## MEMORANDUM OPINION

Plaintiff Stern-Jones filed this medical negligence action against Defendants Sharon L. Marselas and Marselas & Landman, M.D., for damages and other relief. Now before this Court is Defendants' Motion for Summary Judgment ("Defendants' Motion") (Docket Item No. 42). The Court has reviewed Defendants' Motion, Plaintiff's opposition, and the memoranda related thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons below, the Court hereby GRANTS Defendants' Motion.

**I.     Background**

Plaintiff visited Defendants in September of 2002, due to complaints of numbness, tingling, swelling, and weakness in the hands. After examination and review of an MRI, Defendant Marselas recommended surgery to repair herniated discs at three different levels: C4-5, C5-6 and C6-7. Both parties agree that an anterior cervical discectomy was the type of surgery originally discussed. Plaintiff contends that Defendant Marselas recommended, and she agreed with, only an anterior cervical discectomy and fusion, at the three levels, with use of bank bone and anterior plating. Defendant Marselas indicates that, at first, she suggested that the

-1-

surgery should be performed from the anterior, but that prior to the surgery, she had discussions with Dr. Mathews, Plaintiff's Primary Care Physician, who urged the use of a posterior procedure. She claims that she had discussions with Plaintiff through which she indicated she had not yet decided whether to perform an anterior or posterior surgery. Plaintiff contends that no such discussions occurred.

Plaintiff appeared for surgery on October 9, 2002. Shortly before her surgery, she signed a consent form indicating that she was consenting to a posterior cervical discectomy and fusion at the three levels. The parties agree that, during surgery, Defendant Marselas performed a posterior cervical laminectomy. Plaintiff claims that Defendant Marselas, through her actions, failed to obtain informed consent prior to the posterior procedure. Plaintiff also alleges that, contrary to Plaintiff's understanding and the consent form she signed, indicating "instrumentation" would be used and that a posterior cervical discectomy would be performed, Defendant Marselas performed a posterior cervical laminectomy with skeletal traction tongs. Thus, she claims the wrong procedure was performed.

Plaintiff subsequently filed this action for medical negligence. The negligence allegation contained two separate claims: failure to obtain informed consent and failure to perform the correct surgery for Plaintiff's pathology. (Plf.'s Resp. to Def.'s Mot. to Dismiss, June 13, 2006.) On June 26, 2007, this Court granted Defendants' motion to strike Plaintiff's expert testimony as it pertained to the wrong procedure having been performed. (Docket Item No. 47). Plaintiff now moves for summary judgment on the remaining issue of informed consent.

**II.        Argument**

Defendants argue they are entitled to summary judgment because there is no genuine dispute of material facts regarding certain elements of her claim for lack of informed consent. Specifically, Defendants argue that Plaintiff cannot demonstrate causation. Defendants contend Plaintiff must provide proof of proximate causation, which requires (a) an undisclosed material risk that would have altered the decision of a reasonable person in her position to undergo the treatment if the risk had been disclosed, and (b) that the particular risk materialized and caused injuries. Defendants contend that Plaintiff is unable to bear her burden with respect to both of these prongs.

Regarding the former, Defendants assert that Plaintiff has failed to identify any undisclosed material risk associated with posterior cervical laminectomy that would have changed her decision to undergo surgery. Likewise, Defendants argue that Plaintiff has failed to provide any facts to the effect that a reasonable person in Plaintiff's position would not have consented to the posterior procedure. Defendants also argue that Plaintiff has failed to show, subjectively, that she also would not have opted for the surgery.

Regarding the latter, Defendants contend that Plaintiff fails to demonstrate a tangible harm as a result of the undisclosed risk. They claim that, not only is there no claim as to what undisclosed material risk existed, but Plaintiff has not provided any evidence of a physical harm that directly resulted from Defendant Marselas' alleged failure to inform of such risk. Defendants argue that nothing in Plaintiff's complaint, deposition testimony, or in the record as a whole, addresses the issue of a harm resulting directly from any undisclosed risk.

Plaintiff asserts that she has presented information attesting to the posterior operation performed by Defendants as the proximate cause of the injury that Plaintiff suffered. Specifically, Plaintiff's expert opines that "as a direct and proximate result of the breach of the standard of care outlined above, Ms. Stern-Jones required a subsequent surgery by Dr. Ducker on March 25, 2003, and developed subsequent neurologic and spinal related damages." Plaintiff argues that there is evidence suggesting that a material, undisclosed risk existed, as demonstrated by the deposition testimony of Defendant Marselas, who stated that anterior fusion has a higher success rate and creates a stronger fusion than a posterior approach. Plaintiff apparently claims that a reasonable person in Plaintiff's person would not have consented to the posterior surgery, but would have consented to the anterior procedure.

Likewise, Plaintiff contends that she would not have subjectively consented to the procedure, evidenced by her deposition testimony in which she states that she told the doctor she could not do the procedure posteriorly. Finally, Plaintiff argues that injuries of Plaintiff were the direct and proximate cause of Defendant Marselas' breach of the standard of care. Plaintiff contends that, if a jury were to find all of Plaintiff's evidence credible, it could render a verdict in favor of Plaintiff on the issue of informed consent. Thus, she argues, sufficient issues of material fact remain in dispute and Defendants' Motion must be denied.

### III.    Legal Standard

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23

(1986); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). A court must construe the facts alleged and reasonable inferences in favor of the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

To prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of fact exists and that it is entitled to judgment as a matter of law. *Pulliam Inv. Co., Inc. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

"Once the moving party discharges its burden . . . , the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Kitchen v. Upshaw*, 286 F.3d 179, 182 (4th Cir. 2002). Where the nonmoving party has the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The disputed facts must be material to an issue necessary for the proper resolution of the case." *Everett, Inc. v. Nat'l Cable Adver., L.P.,* 57 F.3d 1317, 1323 (4th Cir. 1995). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**IV.     Discussion**

       A.     Lack of Informed Consent

A cause of action for lack of informed consent requires that (1) a material, undisclosed risk existed; (2) the material risk occurred and caused injury; (3) a reasonable person in the patient's position would not have consented had there been a disclosure of the material risk. *E.g., Bankert v. United States*, 937 F. Supp. 1169, 1182 (D. Md. 1996)*; see also Lipscomb v. Memorial Hosp.*, 733 F.2d 332, 338 (4th Cir. 1984)  (requiring that the risk materialized and caused injuries)*; Sard v. Hardy,* 379 A.2d 1014 (Md. 1977) (requiring material, undisclosed risk and providing objective test for causality).  If on any of these issues there is no genuine dispute as to any material facts, and the resulting analysis would lead to judgment as a matter of law in favor of Defendants, the Court will grant Defendants' Motion.

       *1.     Material, Undisclosed Risk*

Defendants' Motion addresses the failure of Plaintiff to identify any material risk associated with the posterior procedure.  A material risk is one which a physician knows or ought to know would be significant to a reasonable person in the patient's position in deciding whether or not to submit to a particular medical treatment.  *Sard*, 379 A.2d at 1022.

With respect to this element, Plaintiff contends that "Defendants did not explain the option of posterior cervical laminectomy," and discusses the fact that the only procedure discussed with Plaintiff was an anterior procedure.  Plaintiff refers to two pieces of evidence that she believes to address the issue of material risk.  First, Plaintiff cites Defendant Marselas' deposition testimony, in which she states that an anterior fusion has a higher success rate than a posterior fusion, and that it creates a stronger fusion than a posterior approach would.  Second,

Plaintiff refers to Defendant Marselas' written statement that "[w]ith a 3-level fusion I feel that anterior plating is mandatory."

Defendants contend that Plaintiff is "twisting" the words of Defendant Marselas. Specifically, Defendants argue that Defendant Marselas' discussion of posterior fusion is entirely inapplicable, as it refers to a "fusion" procedure, and not the "posterior cervical laminectomy" that was actually performed on Plaintiff. The deposition testimony in dispute follows:

> Q   What's the advantages of doing the procedure from an anterior approach?
> A   What procedure?
> Q   A **cervical fusion**.
> A   An **anterior fusion has a higher success rate** as far as the fusion takes or becomes solid. And it also gives a stronger fusion.
> Q   Are there any advantages to **doing a fusion from a posterior approach**?
> A   Are there any advantages? Not having any extensive academic research into that topic, my initial answer is I can't think of any advantage in doing a fusion from posteriorly–that is, **if one's primary goal in surgery were to do a fusion**.
> Well, yes, I would always prefer to do it anteriorly because it's going to be stronger that way. However, it's technically easier to do a multilevel fusion posteriorly than anteriorly.
> Q   Why?
> A   Because anteriorly you fuse one level at a time, vertebra two to vertebra three. And then it's another almost identical procedure to then fuse vertebra number three to vertebra number four and so on. Whereas, posteriorly it's easier to do a long string.
> Q   Let's go back to the cervical laminectomy . . .

(Mars. Dep. 19:17-21; 20, March 22, 2007).

Defendants correctly state that Defendant Marselas here refers to a cervical fusion, rather than a cervical laminectomy, when she states that the anterior approach has a higher success rate and results in the fusion becoming more solid. Thus, the Court agrees that Plaintiff's citing of Defendant Marselas is misplaced and the preceding statements do not support an inference of a

material risk associated with the cervical laminectomy procedure. There is no dispute of the fact that a posterior cervical laminectomy was performed.

Likewise, Defendant Marselas' statement that anterior plating was "mandatory" also does not support Plaintiff's argument. Her written statement was that "with a 3-level fusion I feel that anterior plating is mandatory." (Plf. Ex. E.) During deposition testimony, Defendant Marselas clarifies:

> Q   Can you describe what you meant by anterior plating is mandatory?
> A   That **if we did the anterior operation where we fused** four vertebrae or three motion segments, I felt that, because of the number of segments, some kid of reinforcement, i.e., **anterior plate was really necessary** to give the patient the best possible chance of successful fusion.

Plaintiff presents no facts to dispute this testimony. Thus, the anterior plating was only mandatory if an anterior three-level disk fusion were to occur. Because Defendant Marselas performed a posterior cervical laminectomy, the "mandatory" comment is not applicable.

It is Plaintiff's burden to confront Defendants' Motion with an affidavit or other similar evidence addressing what she claims the risk inherent in the posterior cervical laminectomy procedure to be. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256. Plaintiff has made no assertion to this Court, nor provided evidence in the form of affidavit, deposition, or otherwise, to suggest that such a risk existed. Not only must Plaintiff provide evidence, but she must provide sufficient evidence for a jury to return a verdict in her favor. *Id.* at 249-50. She has not met her burden.

In addition to the absence of any affidavit or deposition testimony to support Plaintiff's position, Plaintiff's own expert, Anthony J. Hall, M.D., has provided nothing on this point. Although neither the scope nor the breach of the physician's duty must be established by medical

expert testimony, such expert testimony is required "to establish the nature of the risks inherent in a particular treatment, the probabilities of therapeutic success, the frequency of the occurrence of particular risks, the nature of available alternatives to treatment and whether or not disclosure would be detrimental to a patient." *Sard*, 379 A.2d at 1024. Here, although Dr. Hall indicates that he believes certain breaches of the standard of care have occurred, he proffers not one statement to suggest that a risk exists that is inherent to, or that the failure rate is greater with, a posterior cervical laminectomy. Given the complete lack of evidence, the Court cannot find that Plaintiff has satisfied her burden in overcoming a motion for summary judgment. Thus, Defendants' Motion is GRANTED on this issue.

*2.     Materialization of the Risk*

In order to prevail on her claim, Plaintiff must also provide evidence to suggest that the undisclosed material risk actually occurred and caused injury to her. *Lipscomb*, 733 F.2d at 338, *Wachter,* 877 F.2d at 261. In *Lipscomb*, for example, this burden was met when the plaintiff and defendant both testified that the risk of difficulty in swallowing actually occurred, and the plaintiff was in pain, lost weight, and had nausea and other complications. 733 F.2d at 338. Because at the first step the Court finds that Plaintiff has not provided any evidence of a material, undisclosed risk inherent in the posterior cervical laminectomy, it follows that the Court cannot find that Plaintiff has made a sufficient showing that such a risk has materialized.

Even assuming, *arguendo*, that Plaintiff had overcome Defendants' Motion at the first step, she would still not prevail at this step. Plaintiff provides no evidence of any risk having materialized or any injury having occurred, aside from the general allegation in her complaint. She provides a conclusory statement made by Dr. Hall, in which he states, "as a direct and

proximate result of the breaches of the standard of care outlined above, Ms. Stern-Jones required a subsequent surgery by Dr. Ducker on 3/25/03 and developed subsequent neurologic and spinal related damages." Aside from Dr. Hall's bald statement, however, nowhere does Plaintiff allege or provide facts to support that she suffered from any of the alleged undisclosed material risks. The Court does not know whether she suffered injuries, and if so, what those injuries were. Although the Court should draw inferences in favor of Plaintiff, they must not be so tenuous as to amount to speculation or conjecture. *Everett,* 57 F.3d at 1323 (citation omitted). Legal assertions couched as factual allegations, such as the one given by Dr. Hall, are not sufficient to satisfy Plaintiff's burden.

Because Plaintiff bears the burden of providing specific facts demonstrating a genuine issue for trial, and *must* provide sufficient evidence favoring her case for a jury to return a verdict in her favor, the Court finds that Plaintiff has not fulfilled her burden. *Kitchen* 286 F.3d at 182; *Anderson,* 477 U.S. at 249-50. Absent any assertion of the undisclosed risk having materialized and caused actual injury, no jury could return a verdict in favor of Plaintiff. Thus, the Court must GRANT Defendants' Motion on this issue.

*3.     Objective Test*

Plaintiff must also show that a reasonable person in the patient's position would have withheld consent if any alleged material risks had been disclosed.[1]  *Sard*, 379 A.2d at 1025;

---

[1] In *Lipscomb*, the Court of Appeals for the Fourth Circuit interpreted *Sard* to require an undisclosed risk that "would have altered [the plaintiff's personal] decision to undergo treatment had it been disclosed." *Sard* stated that "the causality requirement . . . is to be resolved by an objective test," determining whether a "reasonable person" in the patient's position would have withheld consent if all material risks had been disclosed. Thus, the Court proceeds with the latter analysis. While the reasonableness test here is similar to that in determining materiality of the risk, and the analysis may be supported by the same considerations, they are two separate

*Goldberg v. Boone*, 912 A.2d 698, 714 (Md. 2006). If a reasonable person would not have changed the decision upon disclosure of all material risks, there is no causal connection between nondisclosure and the damages suffered. If, however, disclosure of all material risks would have caused a reasonable person in the position of the patient to refuse the surgery, a causal connection is shown. *Goldberg*, 912 A.2d at 714 (citing *Sard*, 379 A.2d at 1025).

Again, because Plaintiff has not made the necessary showing regarding a material, undisclosed risk at the first step, the Court need not address this element. Assuming *arguendo,* however, that Plaintiff had met her other burden, the Court would still find in favor of Defendants on this issue. In *Sard*, the plaintiff's undisputed testimony indicated that her decision to have sterilization surgery was prompted by fears of a subsequent pregnancy and those concerns were substantiated by the defendant's opinion of her condition. *Sard*, 379 A.2d at 1025-26. The court found that those facts may have supported an inference that a reasonably prudent person in the plaintiff's position would have not consented to the procedure in the face of full disclosure. *Id*.

The plaintiff in *Sard* provided detailed concerns, relating to her specific circumstances. The jury could consider those concerns and determine whether a reasonable person in that same situation would have declined to have the procedure done. In the present case, however, Plaintiff has not provided the Court with any specific concerns she had relating to the surgery, or any circumstances to provide a context to her situation. Instead, Plaintiff provides the Court with the following excerpt from her deposition:

---

elements. *Sard,* 379 A.2d at 450.

| | |
|---|---|
| A | She went in and said something to somebody and then she came back out to me and she said to me I don't know if I'm going to go through the front of your neck or the back of your neck. |
| Q | And what did you say? |
| A | That there was no option, that she didn't explain. |
| Q | Did you say something to her? |
| A | Yes. |
| Q | What did you say, to the best of your recollection? |
| A | That she couldn't do it. |

(Stern Dep. 55:6-17, Jan. 9, 2007).

This is not sufficient evidence to create an inference that circumstances existed in Plaintiff's situation that would cause a reasonable person to not consent to the posterior cervical laminectomy. Likewise, Plaintiff's hindsight testimony regarding what she would have done, although relevant, is not sufficient to determine the issue of what a reasonable person would have done. *Sard*, 379 A.2d at 1025.

Further, when Plaintiff was questioned regarding whether she wanted "an operation" at the time she went to visit Defendant Marselas, she responded that "whether I wanted it or not, I knew that that was the outcome of it, that it needed to be done." (Stern Dep. 31:6-8.) Thus, the only glimpse into the circumstances surrounding Plaintiff's decision is one that reflects a desire to do whatever was necessary for her health. With that context, and absent any contradictory information from Plaintiff, the only inference to be made is in favor of Defendants.

In essence, not only has Plaintiff failed to make a sufficient showing that any undisclosed material risk existed, but she has also failed to make a sufficient showing that, had one existed, it would have caused someone in her position to change their mind. She has not given any context to her "position" for any jury to know what factors a reasonable person would take into

consideration if put in Plaintiff's shoes. The Court therefore GRANTS Defendants' Motion on this issue.

        **B.**      **Wrong Procedure**

Plaintiff originally made claims for negligence relating to the wrong procedure having been performed on Plaintiff. The nature of Plaintiff's claim that the wrong procedure was performed requires the testimony of a medical expert. Because the Court has stricken all testimony of Plaintiff's expert on the issue of the wrong procedure having been performed, Plaintiff cannot present sufficient evidence to warrant submission of this claim to the jury. Thus, Defendants' Motion is GRANTED with respect to the wrong procedure having been performed.

**V.**      **Conclusion**

For the foregoing reasons, the Court GRANTS Defendants' Motion. Judgment shall be entered in favor of Defendants and the case shall be closed.

                                                /s/
                                                Charles B. Day
                                                United States Magistrate Judge

CBD:acg